Sylvester A. Lowery v. Commissioner.
Lowery v. Commissioner
Docket No. 93323.
United States Tax Court
T.C. Memo 1964-30; 1964 Tax Ct. Memo LEXIS 306; 23 T.C.M. (CCH) 152; T.C.M. (RIA) 64030; February 10, 1964
*306 The petitioner, a real estate broker for many years, occasionally bought and sold real property. In 1953 he sold certain properties which he claimed he held as investments and not "primarily for sale to customers in the ordinary course of his trade or business." Section 117(a)(1) of the 1939 Code. He also claimed that the sale that year by him of all the stock of a corporation whose sole asset was one of the properties should be treated as a sale of realty. Held: The petitioner held the properties in question for investment purposes and therefore was entitled to capital gain treatment on their disposition. This was also the case with respect to the property held by his solely owned corporation and therefore the question of whether he sold realty or capital stock is rendered moot. Joseph F. McVeigh, 2026 Land Title Bldg., Philadelphia, Pa., for the petitioner. Samuel T. Reiner, for the respondent. HOYT
Memorandum Opinion HOYT, Judge: The respondent determined a deficiency of $12,161.13 for the year 1953. The remaining issues are whether certain properties sold by the petitioner were sold to customers in the ordinary course of business and, if so, whether *307 one of the sales involved the sale of real estate or capital stock. Some of the facts have been stipulated and are so found. The petitioner, Sylvester A. Lowery, resides at 8200 Stenton Avenue, Philadelphia, Pennsylvania. Lowery is a cash basis taxpayer, and he filed his 1953 income tax return with the district director of internal revenue at Philadelphia, Pennsylvania. This return stated that he was in the business of "Buying and Selling Real Estate." Lowery is 75 years old and has been in the real estate business for 51 years. He has been a real estate broker since 1912, and he still holds a real estate license. He was associated in the real estate business with William Kuhn, Jr., from 1912 until 1945 and had several offices in Philadelphia. For some time prior to 1945, Lowery and Kuhn had conducted the business in corporate form. In 1945 they dissolved the corporation in order to continue their respective real estate business activities as separate operations. This division was made necessary by friction between their two sons who were being brought into the business. As part of the dissolution, Lowery was given title to certain premises at 4859 and 4861 North 5th Street *308 where the corporation's offices had been for 33 years. Lowery continued to operate the business in his own name at this and other locations. In 1946, Lowery purchased property at 1716 Cheltenham Avenue and operated his real estate business from that address. Around 1950, Lowery had a coronary attack and his son, who was active in building apartments under section 608 of the Federal Housing Act, persuaded him to curtail his normal real estate activity and join him in an advisory capacity. Lowery accordingly transferred his offices to downtown Philadelphia. Prior to his coronary attack, Lowery had an elaborate real estate organization with sometimes as many as 18 employees, and their activities included rental collections, conveyancing, building and selling for other builders. Lowery built several hundred houses when in partnership with Kuhn and did a little building after the partnership was dissolved. Lowery represented the firm of Thomas Kelly and Sons which was one of the largest residential builders in Philadelphia. Lowery bought all their ground for them and sold all of their houses but had the policy of not selling the houses unless he had bought the ground. In the early part *309 of 1951 Lowery and Thomas Kelly (one of the sons in the above-named company) entered into an agreement whereby Lowery was to acquire title to certain realty on Bustleton Avenue and thereafter convey it to Thomas Kelly and Sons. It was contemplated that the Kelly firm would construct houses on the land and engage Lowery as its broker to sell them. Shortly before the time for settlement young Kelly withdrew from the agreement since he feared that his father, who wished to cut down on their amount of business, would not approve of the transaction. As a result, Lowery completed the settlement and acquired title to the land in his own name. Young Kelly made another agreement with Lowery shortly thereafter that if Lowery would acquire certain realty on Rhawn Street, they would themselves build 132 residential homes on this property. However, Kelly was again deterred by fear that his father was against extra family business. He decided not to go through with the project after Lowery advised him that it would take two years to make the necessary improvements preparatory to building. Lowery had already signed the agreement of sale and decided to go through with the plan and build the houses *310 on his own. Title to the property was taken through a straw party. He introduced the necessary ordinances for grading, piping, sewer and paving, but he abandoned the idea when he learned that the improvements would cost over $100,000 and also because of his health. Consequently, no improvements were made to the land. Lowery never advertized it for sale and no rent income was realized from it. In 1953 a real estate broker named Flood learned that Lowery had introduced the above ordinances and contacted Lowery with regard to purchasing the property. Lowery refused to sell at first but finally he was given an offer he could not turn down. On May 16, 1953, Lowery incorporated under the laws of Pennsylvania a corporation known as Solly Company. On June 10, 1953, the Rhawn Street property was transferred by the straw party to Solly Company. This was done on the advice of Lowery's counsel in order to avoid personal liability on the sale of the property. Lowery, the sole stockholder of Solly Company, sold all of his stock to Flood under the terms of a written agreement dated May 26, 1953, and finally settled on November 9, 1953. At the time of sale Lowery considered that he was selling *311 real estate and not stock, and it is clear from the contract of sale that both parties were primarily concerned with the realty. The sole asset of Solly Company at all times prior to the sale to Flood was the Rhawn Street property. On his income tax returns for 1951 through 1953 Lowery reported the following amounts: Profit or Loss
Gains (Net)
Adjusted Gross
of Real Estate
From Sale of
Year
Income
Business
Real Estate
1951
$29,933.99
$ 266.06
$16,470.63
1952
22,207.94
(6,213.33)
53,342.54
1953
18,908.84
(8,251.71)
49,628.36
Lowery is a well known ground specialist and as a result of his reputation receives numerous inquiries for ground. He is a member of the Home Builders and receives ground requests from them through their real estate agents. He often drives around Philadelphia looking for pieces of property for himself or for confidential buyers. However, he never buys property that is listed for sale with him. During the taxable year 1948 through 1953 he purchased and sold 17 tracts of land as follows: Date
Date
Description of Property
Acquired
Sold
4861 North 5th Street
5-31-45
1-25-50
Land: Northwest side Walker Street 120's Robbins Avenue
3-10-50
5-10-50
Land: 8032 Thouron Avenue
6- 1-48
9-15-50
Land: Miscellaneous lots on Butler Pike
1950
1950
4859 North 5th Street
5-12-45
2-28-51
1716 Cheltenham Avenue
3-22-46
3-21-51
Land: Lot # 11, Abington, Pennsylvania
10-20-50
6- 5-51
Land: Gorgas Lane Lot
10-26-48
10- 9-51
Land: 69th Avenue
6-22-51
11-13-51
Land: Bustleton Avenue and Red Lion
3-27-51
7-17-52
1955 (Two sales)
1956
Land: Fountain and Shalkop Streets
5-15-50
8-28-52
2-15-60
Land: Abington, Pennsylvania
6-18-51
9-15-52
Land: Rodney Avenue and Gorgas Lane
6-28-48
10-21-52
Land: Butler Pike, Horsham, Pennsylvania
3-19-50
11-17-52
Land: 21st Street and Church Lane
1-15-48
2- 9-53
Land: Gates Street and Ridge Avenue
5-15-50
6- 6-53
Land: Rhawn Street (Solly Corporation property)
9-18-51
6-10-53 (Transferred to
Solly Company)
11-10-53 (Solly Com-
pany sold)
Land: River Road, Pennsauken, New Jersey
1-10-51
12- 1-54
*312 None of these properties were purchased by Lowery after June of 1951. On his return for 1950 Lowery reported the sale of four of these properties. One was his office at 4861 North 5th Street and three were sales of vacant land referred to above as 8032 Thouron Street, Northwest side Walker Street, and miscellaneous lots on Butler Pike. Lowery reported the first two properties as long-term capital gains and the Walker Street property as short-term capital gain. The miscellaneous lots located on Butler Pike were part of a subdivision owned by Lowery and his partner, Shubin. The respondent subsequently disallowed capital gain treatment on these lots since the subdivision was sold piecemeal to customers in the ordinary course of business, and Lowery agreed with this determination. Lowery reported five sales in 1951. Two of these were his real estate offices. The one at 4859 North 5th Street had been his office for over 30 years and the one at 1716 Cheltenham Avenue for 5 years. The 69th Avenue plot was sold to the son of a friend at his friend's special request. The Abington lot was one of several purchased around 1948 by a partnership between Lowery and Connell McGill for the purpose *313 of building homes on some and selling the rest to individuals who might desire to build their own homes. Lowery received the lot on dissolution of the partnership. The lot on Gorgas Lane was held for over 3 years, but Lowery could not remember any details of the sale. Lowery reported five additional sales in 1952. He sold the other Abington lot he received on dissolution of the partnership with McGill. The property sold on Butler Pike, which was reported as long-term capital gain, was part of the same subdivision on which the respondent had disallowed capital gain treatment on the 1950 income tax return. The property at Bustleton Avenue and Red Lion Road was purchased pursuant to the aforementioned agreement with Thomas Kelly. Immediately after the purchase, the City of Philadelphia passed an ordinance for the construction of a freeway across the property greatly increasing the value. However, the propsect of this ordinance was unknown to Lowery at the time of purchase. The land located at Rodney Avenue and Gorgas Lane had been bought by a partnership composed of Lowery and two brothers, P. J. and Thomas P. McFarland, for the purpose of constructing houses thereon. Due to friction *314 between the brothers it became apparent that they would be unable to build houses amicably and consequently they sold the land. Lowery also sold the lot at Fountain and Shalkop Streets which he had bought on the basis of a rumor that the city might build a library there. In 1953, Lowery sold land at Gates Street and Ridge Avenue which was part of the property acquired in 1950 with the Fountain and Shalkop Streets lot. The plot at 21st and Church Lane was sold at a loss due to the deterioration of the neighborhood. An earlier attempt to auction the property had not produced a single buyer. The Pennsauken, New Jersey, property sold in 1954 had been bought in 1951 on the suggestion of another broker. Since it was reasonably priced petitioner thought that it made a good investment. Except for the Rhawn Street property (Solly Company) and that on Rodney Avenue and Gorgas Lane, Lowery had no intention of building on the properties. He made no improvements on any of the properties; he did not advertise any of them for sale except for the unsuccessful auction of the 21st and Church Lane lot; and he realized no income from them other than on their sale. The respondent determined that *315 the gain on the sale of the Solly Company stock was "short-term capital gain or ordinary income." On brief the respondent argued that since the stock of Solly Company had been held less than six months it was short-term capital gain. He also argued alternatively that if the sale were considered a sale of realty rather than stock then it should be deemed to be a "sale to customers in the ordinary course of his trade or business" so as to be excluded by section 117(a)(1) of the 1939 Code from capital gain treatment. Lowery contended that the sale of the Solly Company stock was in substance a sale of real estate and that he held it and the other two properties sold in 1953 as investments and not "primarily for sale to customers in the ordinary course of his trade or business." Pursuant to an order of Court the parties filed supplemental reply briefs in which they conceded that the property was transferred to Solly Company in a transaction qualifying for nonrecognition of gain under section 112(b)(5) of the 1939 Code. Accordingly, under section 113(a)(6) the basis for the stock is the same as that of the property transferred and section 117(h)(1) provides that the holding period of the *316 property transferred be tacked onto that of the stock received. This is true even if the property transferred was not a capital asset in the hands of Lowery. See (C.A. 5, 1947), affirming . The parties now agree that the holding period of the Solly stock is over six months. Lowery contends that the determination that the gain was "short-term capital gain or ordinary income" raises only the issue of the proper holding period. He takes the position that the phrase "or ordinary income" is parenthetical to the phrase "short-term capital gain." Although somewhat ambiguous, we do not construe the phrase so narrowly. It is sufficient to raise the issue of whether a capital asset was sold as well as the question of its holding period. Since it is admitted that a sale of the Solly stock would result in long-term capital gain we need only decide whether Lowery sold real estate or whether he sold the capital stock of the Solly Company. However, even if it is decided that Lowery sold real estate and not capital stock he will still be entitled to long-term capital gain treatment unless he sold it "to customers *317 in the ordinary course of his trade or business." It is well established that a dealer in real estate may nevertheless be an investor with respect to some of his properties. ; ; . The question of whether a person holds realty "primarily for sale to customers in the ordinary course of his trade or business" is basically one of fact which must be answered on the particular facts of each case. (C.A. 5, 1957), affirming a Memorandum Decision of this Court; ; In making this determination the courts have relied upon various factors including the following: (1) The intent of the taxpayer with respect to the particular asset in question; (2) the purpose for the acquisition and disposition of the property; (3) the period the property was held; (4) the number, frequency and substantiality of sales; and (5) the extent of development, improvement, and sales activity. ; *318 . Although the Rhawn Street property had been bought for the purpose of developing it and building homes, that intention soon vanished, and by 1953 Lowery had become a reluctant seller. He never developed the tract at all, nor did he sell lots or build houses there. For purposes of determining the character of an asset, the purpose for which it is held at the time of sale is the significant one. (C.A. 6, 1960), affirming ; After considering the record in its entirety we find that Lowery was not holding the three properties sold in 1953 "primarily for sale to customers in the ordinary course of his trade or business." In so finding we give particular weight to the fact that Lowery had held the 21st Street and Church Lane property for five years, the Gates Street and Ridge Avenue property for three years, and the Rhawn Street tract for two years. We also considered the facts that Lowery made no overt efforts to list or advertise the properties and he had made no improvements on any of the properties nor *319 did he replace them by further purchases. In 1953 he held the properties for investment. We do not decide the question of whether the sale of Solly Company stock was actually one of real estate since that question is rendered moot by the above finding. Decision will be entered under Rule 50.